FOUNTAIN v. J. J. NEWMAN LUMBER Co.

[78 South. 157, Division B.]

MASTER AND SERVANT. · *Safe place to work. Negligence. Question for jury.*

Under the facts in this case, which was a suit by an employee against his master for injury claimed to have been caused by the negligence of the master in overloading a two-wheel dolly with lumber and supporting the ends with 1 x 4 pine scantling, the negligence charged being: First, the selection of a weak and improper standard insufficient in size and strength to hold the lumber in place; and second, in having the dolly overloaded with heavy lumber. A peremptory instruction for the defendant should not have been given, since if it be true as testified by plaintiff, that the standards used to hold the lumber in place were insufficient in strength, and if, as he testified, there was further available material which would make the standard safe and if the dolly was overloaded to the extent of making it dangerous as testified by plaintiff. In such case these were questions which should have been submitted to the jury under proper instructions.

APPEAL from the circuit court of Forest county. HON. PAUL B. JOHNSON, Judge.

Suit by Henry Fountain, by next friend, against the J. J. Newman Lumber Company. From a judgment for defendant on peremptory instruction, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Currie & Currie,* for appellant.

The points made and urged by the appellant in this appeal on this record are:

First, the peremptory instruction was improperly granted.

Second, it was an issue of fact to be submitted to the jury for its decision as to whether the appellant received the broken arm while working for the appellee, in the manner and at the time and place alleged in

the declaration and testified to by him; or whether he received the injury at some other time and place in some other manner.

. Third, it was an issue of fact to be submitted to the jury for its decision as to whether, if the appellant did receive his injury in the manner and at the time and place testified by him while working in the employment of the appellee, he sustained the injury solely on account of his own negligence or whether the appellee was guilty of negligence as alleged in the declaration and as testified to by the appellant which contributed in whole or in part to the injury of the appellant.

Fourth, it was an issue of fact to be determined by the jury under proper instructions, as to whether the appellant was guilty of any negligence which contributed to his own injury.

Fifth, it was an issue of fact to be determined by the jury, under proper instruction, as to whether the appellee was guilty of any negligence as charged in the declaration and as testified to by the appellant, which contributed in whole or in part to the injury of the appellant.

. Sixth, it was an issue of fact to be determined by the jury under proper instructions as to whether the appellant received the injury on account of the sole negligence of the appellee as alleged in declaration and as testified to by the appellant.

Seventh, the question of negligence in the case was an issue of fact to be decided by the jury under the statutes and under proper instructions by the court.

All of which issues arise upon the face of this record and were by the peremptory instruction erroneously withdrawn from the jury.

We fail, utterly, to conceive upon what ground the court could have granted the peremptory instructions except upon the theory of the assumption of risks by the appellant. In fact the court announced that it was clear that the appellant assumed the risk of being hurt

in the manner in which he was hurt because the proof
shows and he admits, that he knew that some of these
stays, stanchions or standards had broken.    But the
assumption of risks is abolished in the state of Miss-
issippi.    Chapter 156, page 200, of the Laws of Missis-
sippi 1914.    Nor could the court have granted the peremp-
tory instruction on the ground of contributory negli-
gence upon the doctrine of contributory negligence for
it has also been abolished by statute in this state, and
had been abolished long before the injury sued for.
Chapter 135, page 125, of the Acts of 1910.

Even under the rigid rule of the common law the
servant never did assume the risks of injury on ac-
count of the negligence of the master no matter to what
particular details of the duties of the master, the
negligence of the master may have related; in other
words if the master was negligent in the performance
of any duty imposed primarily upon him by law, and
his negligence resulted in injury to his employee he was
liable, even under the common law.

The peremptory instructions could not be granted in
this case under the common law because the dolly be-
longed to the master and was furnished by the master,
the boards and pieces of lumber these stays or stan-
chions were made of belonged to the master, and were
furnished by the master; the dollies and these weak,
inadequate and insufficient stays, standards or stan-
chions were the tools, machinery, appliances and fix-
tures belonging to, provided by and furnished by the
master with which for the appellant to do his work,
and the common-law rule devolved, primarily, the ab-
solute duty upon the master to see to it that these
things were reasonably safe. . The proof in the case
demonstrates, if believed by the jury, that they were
not reasonably safe because these stays, standards or
stanchions often broke and the defendant had actual
knowledge and notice that they did break often and
that they were dangerous, defective, inadequate and in-

sufficient for the work and strain required of and put upon them.

But there is here no occasion for any discussion of the common-law doctrine of either the assumption of risks or contributory negligence, because both, as they existed in common law, had been abolished before the trial of this case and before the date of the injury to the appellant.

If your statutes are to be given effect, this judgment will have to be reversed.

*Tally & Mayson,* for appellee.

First: We submit that the burden, in the court below was upon the appellant to prove his case by a preponderance of the evidence and that this he failed to do because his own evidence does not show any actionable negligence on the part of the appellee. It does not show that appellee did not furnish appellant with the ordinary, usual tools and appliances used about that business or that they were unusually unsafe and unless the employer is to be made the insurer of the employee, as a matter of law, then we submit that the appellant was not entitled to have his cause submitted to the jury on the uncertain condition raised by his own evidence.

We contend that his own witness on cross-examination shows that he did not receive the injury, as he claims to have done and that no ordinary human being would be likely to reach any other conclusion than the one reached by the court; that this evidence in this was insufficient to unhold a judgment. Appellant's own witnesses show clearly that by statements made to them, by him, both through the message he sent to Mr. Lambert, his foreman, and to Dr. Bryant that at sometime prior to the evening of the 15th of December, 1915, appellant had injured his wrist some way and that while feeding lumber into the planer machine that

night that the constant jar of the planer blades, while planing the pieces of lumber, which he was required to hold in line jarred his wrist and caused it to hurt and that he applied to his foreman for a change of jobs and got it, and. gave as his excuse that he had a sore arm and that this work was too heavy for him, and that this took place just before the twelve o'clock lunch at night and at a time long before the time he claims now that the lumber fell and hurt his wrist; that his statement to the doctor that his wrist had been hurt before, and he made no claim to the doctor that lumber had fallen upon his arm and broken it, but merely applied for treatment. Now he cannot hold to a part of his witnesses and discard the others. He must stand or fall by the whole record made by his own witnesses.

We therefore respectfully submit that the learned court below committed no error in giving the peremptory instruction and judgment thereon and that the action of the court below in so doing ought to be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Henry Fountain, a minor nineteen years old, was employed by the J. J. Newman Lumber Company in one of its mills to operate a planer. His duties were to feed lumber into the planing mill, and this lumber was placed within easy reach by other employees of the company upon what is known as a lumber dolly, being a carriage or vehicle of two wheels upon which lumber was loaded, in the present case to the height of three and one-half or four feet above the bed of the dolly, and the lumber held in place by means of two standards placed upon either side of the dolly. These standards were boards, one by four inches, made of common pine. The appellant, being employed as above mentioned, had used the lumber from one dolly and moved that out of the way and pulled up the one in question within convenient distance of his place of work.

He turned and got a scantling to "scotch" the wheel, and, after doing this, turned to go to his place, when one of the standards broke which held the lumber, and the lumber fell upon him and broke his arm. He was laid off from December 16th to January 20th. He testified that he had nothing to do with the loading of the lumber upon the dolly or the fixing of the standards to hold the same in place; that duty having devolved upon an employee in another department. The negligence complained of in this case is: First, the selection of a weak and improper standard, insufficient in size and strength to hold the lumber in place; and, in the second place, in having the dolly overloaded with heavy lumber. The plaintiff testified that it was the custom of the company to use standards of the size and character used in the present instance, and that it was not an uncommon occurrence for such standards to give way and break under the weight of the lumber; that such had often happened at the mill. The plaintiff introduced Dr. Bryan and Mr. Lambert, the foreman, Dr. Bryan being the company's physician. Dr. Bryan testified that he examined the arm on the evening after the injury, and it was swollen, and he dressed it and directed Fountain to come back the following morning, when he examined the arm critically and found it broken and splinted the arm. At the time of the injury Dr. Bryan gave a certificate showing that the disability was due entirely to the accident. On the witness stand on cross-examination he testified that plaintiff told him that he had previously had a fracture of the arm, and that he found evidence in his opinion of the arm being fractured. He testified, however, that the arm was fractured, and that the plaintiff was laid off for the time above stated. At the time the injury occurred plaintiff testifies that he went to Dr. Bryan, and that Dr. Bryan asked him if he had a certificate from the foreman, and plaintiff said that he did not have, and Dr. Bryan told him that he could not examine the arm until he pro-

cured such a certificate. That thereupon he searched for Mr. Lambert, the foreman, but could not find him until late in the day, and that he got the certificate and returned to Dr. Bryan and Dr. Bryan told him that he was quite busy, and to come back the next morning, and that the doctor painted the arm in iodine and bound it, and did not examine it critically until the following morning, some twenty-six or twenty-eight hours after the accident. Plaintiff introduced the foreman, who testified as to his injury, but the foreman in his testimony claimed that another employee had come to him something like four hours prior to the alleged injury, and stated to him that Mr. Fountain said that the machine jarred his arm, which had been theretofore broken, and asked for a change of work; that he directed the employee to tell Mr. Fountain that he could work at the edger. At the conclusion of this evidence for the plaintiff the court granted a peremptory instruction for the defendant. We think it was error for the court to peremptorily charge the jury on the facts in this case to find for the defendant. If it be true, as the plaintiff testified, that the standards used to hold the lumber in place were insufficient in strength, and if, as he testified, there was further available material which would make the standards safe, and if the dolly was overloaded to the extent of making it dangerous, as the plaintiff testified it was, these were questions to be submitted to the jury under proper instructions.

For the error indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*